```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                         WESTERN DIVISION
```

UNITED STATES OF AMERICA,      :   NO. 1:03-CV-00167
ex rel DR. HARRY F. FRY,       :
                               :
         Plaintiff,            :
                               :   **OPINION AND ORDER**
    v.                         :
                               :
THE HEALTH ALLIANCE OF         :
GREATER CINCINNATI, et al.,    :
                               :
         Defendants.           :


This matter is before the Court on Defendants' Joint Motion to Certify For Interlocutory Appeal the Order Denying Defendants' Motion to Dismiss (doc. 98), the government's Response in Opposition (doc. 103), and Defendants' Reply (doc. 108). Also before the Court is Mount Auburn Chamber of Commerce and Center for Closing the Health Gap's Motion for Leave to File an Amici Curiae in Support of Defendants' Motion to Certify for Interlocutory Appeal (doc. 102), Relator's Response in Opposition (doc. 107), and Defendants' Reply (doc. 109). For the reasons indicated herein, the Court DENIES Defendants' Joint Motion to Certify for Interlocutory Appeal, and GRANTS leave to file Amici Curiae memorandum, which it has considered in rendering its decision.

**I. Background**

Plaintiff alleges in this case that Defendants The Christ Hospital ("TCH") and The Health Alliance of Greater Cincinnati

("THA") engaged in a "pay to play" scheme that violates the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), the Stark Statutes, 42 U.S.C. § 1395nn, and the False Claims Act, 31 U.S.C. §§ 3729-3733, by assigning time to cardiologists in the hospital's heart station in proportion to the volume of referral of cardiac procedures made by cardiologists to TCH (doc. 7). After a hearing on the matter, by Order of December 18, 2008, the Court rejected Defendants' arguments that Plaintiff's Complaint fails to state a claim upon which relief may be granted (doc. 95). The Court concluded, taking the allegations in the Complaint as true, that the Plaintiff had adequately alleged Defendants operated a cross-referral scheme to cause the government to pay out sums of money, and therefore had alleged viable causes of action in its Complaint (Id.).

In the present Joint Motion, Defendants argue the Court should certify its Order denying their Motion to Dismiss for interlocutory appeal under 28 U.S.C. § 1292(b) (doc. 98). Section 1292(b) gives the district court the ability to make an otherwise unappealable order subject to appellate review where 1) the court is of the opinion that its order involves a controlling issue of law as to which there is substantial ground for difference of opinion, and 2) where an immediate appeal of the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). As for the first factor, a question is a controlling issue of law only if resolution of the question on

appeal could materially affect the outcome of the case, In re City of Memphis, 293 F.3d 345, 350 (6th Cir. 2002).  Further, a substantial ground for difference of opinion exists only when "1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; 2) the question is difficult and of first impression; 3) a difference of opinion exists within the controlling circuit; or 4) the circuits are split on the question." City of Dearborn v. Comcast of Michigan III, Inc., No 08-10156, 2008 WL 5084203 at *3 (E.D. Mich. Nov. 24, 2008).  Generally, the Sixth Circuit disfavors interlocutory appeals, and has directed district courts that such review is granted sparingly and only in exceptional cases. In re City of Memphis, 293 F.3d 345, 350 (6th Cir. 2002), Vitols v. Citizens Banking Co., 984 F.2d 168, 170 (6th Cir. 1993), In re Bradford, 192 B.R. 914, 916 (E.D. Tenn. 1996).

**II. Defendants' Motion**

In Defendants' view, this Court's Order decided three purely legal issues, any of which decided the other way, would end this action (doc. 98).  Defendants argue this case will present massive discovery challenges, and would likely cause the Court to review some 11,000 false claims on summary judgment (Id.). Moreover, Defendants argue this case could threaten the collapse of the local health care network (Id.).  Taking these concerns into

consideration, Defendants urge the Court to allow for interlocutory review of its Order (Id.).

The Court will review the arguments pertaining to each of Defendants' three asserted issues, seriatum:

**A. Heart Station Time as Remuneration**

First, Defendants challenge the Court's conclusion that "remuneration" under the Anti-Kickback Statute means "something of value" and therefore can encompass the benefit of heart station time (doc. 98). As Defendants frame the argument, the Court found "the staffing of a hospital department can trigger the statute's criminal prohibitions" or that "the mere opportunity to work can amount to remuneration" (Id.). In Defendants' view, the scope of the Anti-Kickback Statute is a prototypical legal question reviewed de novo by a court of appeals (Id. citing United States v. Caldwell, 49 F.3d 251 (6th Cir. 1995), and the question is controlling because should the Sixth Circuit find that "remuneration" excludes heart station time, this case would be dismissed (Id.). Defendants contend the government relies on dicta in United States v. Bay State Ambulance & Hosp. Rental Serv., 874 F.2d 20 (1st Cir. 1989) and United States v. Shaw, 106 F. Supp. 2d 103 (D. Mass. 2000) for the proposition that opportunity to work can amount to remuneration.

Defendants next proceed to argue that the Court misinterpreted the Anti-Kickback Statute because the term "any

4

remuneration" is modified by the phrase "in cash or in kind," and thus a narrower view of remuneration, or at least a finding that the statute is ambiguous, is in order (Id.). Defendants argue the Court's ruling will increase uncertainty among health care providers as to what commercial arrangements are legitimate (Id.). Defendants argue the Court misinterpreted the Department of Health and Human Services Office of the Inspector General ("OIG") Safe Harbor Regulations, as the OIG explained that its "regulation does not expand the scope of activities that [the Anti-Kickback Statute] prohibits," and therefore Defendants were correct to rely solely on the statute to determine whether their conduct complied with the law (Id.). In the end, Defendants argue, whether heart station time constitutes remuneration is a novel question, and thus certification is appropriate (Id.).

The government replies that this is a prototypical pay-to-play case, and there is nothing novel in their allegations that Defendants exchanged something of value, heart station panel time, for referrals (doc. 103). As such, the government argues Defendants' request for interlocutory appeal of the remuneration issue should be denied (doc. 103). The government contends the Court's conclusion that heart station panel time constituted remuneration because it had value to the cardiologists is supported by the text of the Anti-Kickback Statute, all regulatory guidance, all relevant case law, the statute's legislative history, and

common sense (Id.).  According to the government, Defendants cannot point to any substantial grounds for disagreement as to whether the Anti-Kickback Statute prohibits the exchange of referrals for referrals, remunerable work, and new patients, so there is no basis for interlocutory appeal (Id.).

As for Defendants' argument that the words "in kind" in the Anti-Kickback Statute limit the reach of the statute or create ambiguity, the government responds that the trading of referrals for referrals and guaranteed work illustrates an "in kind" exchange (Id.). In the government's view, the Court properly concluded the text of the Anti-Kickback Statute suggests an expansive reading of the form of any kickback directly or indirectly, and regulatory guidance makes clear that remuneration is "anything of value" (Id. citing OIG Anti-Kickback Provisions, 56 Fed. Reg. 35952, 35958 (1991)). The government further argues Defendants have failed to identify a single case holding that valuable commodities like heart station panel time do not fall within the Anti-Kickback Statute's definition of remuneration (Id.). In fact, it contends, the cases that have addressed the scope of the term are consistent with the Court's holding (Id. citing United States v. Bay State Ambulance and Hospital Rental Co., 874 F.2d 20 at 26 (1st Cir. 1989), United States v. Neufeld, 908 F. Supp. 491, 496 (S.D. Ohio 1995), United States v. Shaw, 106 F.Supp.2d 103, 114 (D. Mass. 2000), Klaczak v. Consol. Med. Transp., 458 F. Supp. 2d 622, 678 (N.D. Ill 2006)).

Defendants reply the government does not address the assertion that the remuneration question constitutes a controlling legal question, and thus concedes such question (doc. 108). Defendants argue that only ignoring all contrary arguments can the government suggest the remuneration question does not represent a novel, difficult issue (Id.). Defendants reiterate that in their view the words "in cash or in kind" modify "remuneration" in the Anti-Kickback Statute, and thus such words limit remuneration "in kind" to "goods or services rather than money" (Id. citing Black's Law Dictionary 802 (8th ed. 2004)). Defendants contend that heart station panel time is not money, goods, or services (Id.). Defendants further argue that OIG comments regarding remuneration are inconsistent, as they define remuneration in the comments cited by the government as "anything of value," but in other comments modify such definition with "in cash or in kind" (Id.).

Defendants next reply that even if dicta can be used to support the government's position, there are other authorities supporting Defendants (Id. citing United States ex. rel Perales v. St. Margaret's Hospital, 243 F. Supp. 2d 843, 864 (C.D. Ill. 2003)(court rejected plaintiff's argument that basing "active staff" status on referral volume violated the Anti-Kickback Statute), United States ex rel. Kosenske v. Carlisle HMA, Inc., No. 1:05-CV-2184, 2007 U.S. Dist. LEXIS 84294, at *25 n.9 (M.D. Pa. Nov. 14, 2007)(without reaching the question, court expressed its

7

doubts as to whether payment from third-party payors or the expectation of payment constituted remuneration for purposes of the Stark Act)(overruled on other grounds by United States ex rel. Konsenske, 2009 U.S. App. LEXIS 971 (3rd Cir. Jan. 21, 2009))). Finally, Defendants argue legislative history of the the Anti-Kickback Statute does not show an intent to reach a wide array of routine staffing decisions, and the government's arguments based on "common sense" fail to address the uncertainty created if the statute is found to cover such decisions (Id.).

Having reviewed this matter, the Court is unconvinced there is substantial ground for difference of opinion as to its conclusion that time in the TCH heart station could constitute "remuneration" under the Anti-Kickback Statute. The referral system Defendants allegedly used, that clearly profited Defendants to the exclusion of doctors shut out from work and opportunities to gain new patients, does not merely present a question of "routine staffing decisions" or "the opportunity to work." The benefits were real and were guarded by Defendants, as evidenced by their creation of the alleged shell entity, MDA, to continue implementation of the alleged scheme. The Court finds well-taken the government's position that heart station panel time could constitute remuneration, under the text of the Anti-Kickback Statute, all regulatory guidance, all relevant case law, the statute's legislative history, and common sense. Defendants' cited

8

case authority to the contrary suggest a different outcome, but do not create the requisite serious doubt on the remuneration question so as to create a substantial ground for difference of opinion. <u>Baden-Winterwood v. Life Time Fitness</u>, No. 2:06-CV-00099, 2007 U.S. Dist. LEXIS 58753, *6 (S.D. Ohio, August 10, 2007). In summary, the Court is not of the opinion that its conclusion as to the remuneration question here qualifies this case as one of the exceptional rare cases meriting interlocutory appeal. <u>Vitols v. Citizens Banking Co.</u>, 984 F.2d 168, 170 (6th Cir. 1993), <u>In re Bradford</u>, 192 B.R. 914, 916 (E.D. Tenn. 1996).

    **B.   The Standard of Intent Under the Anti-Kickback Statute**

Defendants next challenge the Court's finding that "purpose to commit a wrongful act" is the applicable standard to satisfy the Anti-Kickback Statute's willfulness requirement, arguing that circuit authority on the question is split such that interlocutory review is appropriate (doc. 98). The government responds that the intent standard applied by the Court was correct, but that even if it was not, the issue of Defendants' intent is a question for the jury regardless of the standard ultimately applied in this case (doc. 103). The government, citing <u>McDonnell v. Cardiothoracic & Vascular Surgical Associates, Inc.</u>, No. C2-03-79, 2004 WL 3733402, at *8 (S.D. Ohio July 28, 2004), and <u>United States v. Neufeld</u>, 908 F. Supp. 491, 496 (S.D. Ohio 1995) further argues that all relevant authority in this district supports the Court's

9

holding concerning the requisite standard of intent, and that Defendants' argument, even if correct, would not terminate the litigation (Id.). This is the case, it contends, because its allegations would meet even the unduly heightened standard advanced by Defendants and this case would proceed in substantially the same manner regardless of the decision on appeal (Id. citing City of Dearborn, 2008 WL 5084203, at *3). In their Reply, Defendants reiterate the existence of a split of circuit authority (doc. 108).

The Court again finds no basis in Defendants' argument for the extraordinary remedy of an interlocutory appeal on the question of the applicable standard of intent under the Anti-Kickback Statute. The Court finds well-taken the government's argument that even if its conclusion as to such standard is in error, this case would proceed in substantially the same manner regardless of the decision on appeal. City of Dearborn, 2008 WL 5084203, at *3. Under such circumstances, an interlocutory appeal on the question of intent would only engender unnecessary delay.

**C. Objective Reasonableness**

Defendants next challenge the Court's conclusion that it was not convinced that principles of Safeco Insurance Co. of America v. Burr, 127 S. Ct. 2201 (2007), applied to the False Claims Act context (doc. 103). In Safeco, the Supreme Court found no violation of the Fair Credit Reporting Act where the defendants' reading of the statute was objectively reasonable. 127 S. Ct. at

2216, n.20. The Court found that even if Safeco does impose the legal requirement that the Court determine whether Defendants' conduct was objectively reasonable, the conduct at question in this case does not pass the smell test (doc. 95).

Defendants argue the Court's conclusions are open to question, and that courts and Congress have struggled with the "grey area" that encompasses Defendants' conduct (doc. 98, citing In re Pharm. Indus. Average Wholesale Price Litig., 491 F. Supp. 2d 12, 18-19 (D. Mass. 2007), United States v. Solinger, 543 F. Supp. 2d 678, 683 (W.D. Ky. 2008), S. Rep. No. 100-109, at 27 (1987), as reprinted in 1987 U.S.C.C.A.N. 682, 707). As such, Defendants request the Court certify this issue for immediate appeal (Id.).

The government responds that interlocutory appeal is inappropriate on the Safeco question, as the Sixth Circuit would have to disregard its own precedent and become the first court to decide that the decision affects the pleading standard under the False Claims Act (doc. 103). Moreover, the government argues the kickback arrangement it alleges does not fall into any grey area or ambiguous area of the law (Id.). Similarly to its position regarding intent, above, the government argues finally that even if Safeco applies here, it would not control the outcome or materially advance the termination of this litigation (Id.). As such, argues the government, interlocutory appeal is inappropriate (Id.).

Defendants reply that pleading standards have nothing to

do with the issue that courts have held that a defendant cannot face False Claims Act liability for reasonable legal interpretations (doc. 108, citing United States ex rel. Morton v. A Plus Benefits, Inc., 139 F. Appx. 980, 983 (10th Cir. 2005)("[e]xpressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false"), United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 378 (4th Cir. 2008)("An FCA Relator cannot base a fraud claim on nothing more than his own interpretation of an imprecise contractual provision"). Defendants similarly argue that the Court's observation that the Complaint alleged doctors challenged Defendants' system is irrelevant because what controls is not subjective intent, but rather only the text of the Anti-Kickback Statute and its precedent (Id.).

The Court finds no basis for the extraordinary measure of granting interlocutory appeal on the question of objective reasonableness under Safeco, as Defendants attempt to apply to this case. The Court finds well-taken the government's position that even if such a standard does apply, it would not control the outcome of this litigation. The Court simply does not find that the alleged pay to play kickback scheme could comport with an objectively reasonable reading of the text of the relevant statutes.

**III. Motion for Leave to File Amici Curiae Memorandum**

The Mount Auburn Chamber of Commerce and the Center for Closing the Health Gap (together, "Amici") filed a Motion for Leave to File an Amici Curiae in Support of Defendants' Motion to Certify for Interlocutory Appeal (doc. 102). Amici seek leave to file their Memorandum, "[g]iven the novel legal theories upon which the United States premises its claims for relief. . .and the devastating impact these claims, if successful, could have on the entire Cincinnati health care community" (Id.).

The Relator opposes Amici's Motion, arguing the Amici are not impartial, and their brief merely parrots Defendants' arguments (doc. 107). In response to Amici's contention that a damages award could affect the viability of TCH and affect the community, Relator responds, "[t]he government has assured this Court that it does not seek to put TCH out of business, and defendants have represented to the government that they have the ability to pay any judgment in this case, even under the government's most extreme damages theory" (Id.).

The participation as an amicus to a brief is a privilege within "the sound discretion of the courts." United States v. State of Michigan, 940 F.2d 143, 165 (6th Cir. 1991). The Court finds in this instance no prejudice to Relator or the government by the submission of Amici's memorandum. The Court has reviewed such memorandum, and has taken Amici's views into consideration in

13

rendering its decision.

**IV. Conclusion**

Having reviewed the arguments of the parties, as well as those of Amici, the Court finds no basis to issue an Order pursuant to 28 U.S.C. § 1292(b) making appealable the issues challenged by Defendants in their Motion.  The Court finds no substantial ground for difference of opinion as to its conclusion that time in the TCH heart station could constitute remuneration, and finds that there would be no material difference in the ultimate outcome of this litigation if Defendants prevailed on the remaining questions of intent and objective reasonableness.  The Court further is unpersuaded that this case will create unsurmountable discovery obstacles, or the necessity for review of some 11,000 claims upon summary judgment.  Plaintiff alleges a simple theory that Defendants set up an illegal scheme that infected all the claims Defendants submitted to the government during the applicable period.  <u>United States ex rel. Singh v. Bradford Regional Medical Center</u>, No. 04-186, 2006 U.S. Dist. LEXIS 65268 at *20 (W.D. Pa. September 13, 2006)(claims are not false due to anything unique per claim, but rather due to the improper relationship between the defendant hospital and the physicians).

Accordingly, the Court DENIES Defendants' Joint Motion to Certify For Interlocutory Appeal the Order Denying Defendants' Motion to Dismiss (doc. 98), and GRANTS Mount Auburn Chamber of

Commerce and Center for Closing the Health Gap's Motion for Leave to File an Amici Curiae in Support of Defendants' Motion to Certify for Interlocutory Appeal (doc. 102).

SO ORDERED.

Dated: February 26, 2009            /s/ S. Arthur Spiegel
                                         S. Arthur Spiegel
                                         United States Senior District Judge