UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex rel. HARRY F. FRY, M.D.,<br><br>Plaintiffs,<br><br>v.<br><br>THE HEALTH ALLIANCE OF<br>GREATER CINCINNATI, et al.,<br><br>Defendants. | Case No. 1:03-cv-167<br><br>Judge S. Arthur Spiegel<br>Magistrate Judge Timothy S. Black |

**ORDER GRANTING UNITED STATES'S MOTION TO COMPEL**

This civil action is before the Court upon the United States of America's motion to compel the production of non-privileged documents (Doc. 105). Defendants The Christ Hospital ("TCH") and The Health Alliance of Greater Cincinnati ("THA") have filed a memorandum in opposition (Doc.128), and the United States has filed its reply (Doc. 131).

Plaintiffs allege that Defendants unlawfully conspired to allocate valuable panel time in the Heart Station at TCH (operated by THA) in direct proportion to the volume of procedures the cardiologists referred to TCH. Defendants deny that they acted unlawfully.

On October 1, 2003, Dr. Charles Hattemer, a cardiologist in private practice with Greater Cincinnati Cardiovascular Consultants, became the new Section Chief of the Department of Cardiology at TCH. As Chief of Cardiology, Dr. Hattemer had general administrative responsibility over the Department of Cardiology at TCH, including administrative responsibility over its Heart Station.

When Dr. Hattemer took over as Chief of Cardiology, he met with numerous administrators at TCH and THA to get a sense of his administrative responsibilities. Specifically, on October 2, 2003, Dr. Hattemer met with Debbie Hayes, who was the Vice President, Patient Care and Chief Nursing Officer, at TCH; and on October 16 and November 10, 2003, Dr. Hattemer met with Jeffrey Morneault, who was Vice President, Cardiovascular Service Line, for THA. Dr. Hattemer kept a notebook in which he recorded notes from these meetings.[1]

---

[1] The Court has reviewed *in camera* the unredacted portions of the redacted notes produced by Defendants to Plaintiffs.

During these three meetings, Dr. Hattemer was not seeking legal advice from Hayes or Morneault (who are not lawyers). Moreover, neither Hayes nor Morneault stated to Dr. Hattemer that the information he was receiving from them had originated from legal counsel.

Years later, however, Defendants now argue that Hayes and Morneault were communicating advice of counsel to Dr. Hattemer in their conversations with him, notwithstanding that they did not tell him that during the meetings. Defendants assert that shortly before these meetings, THA had obtained legal advice about practices that would affect THC's Section of Cardiology, that Hayes and Morneault received this legal advice, and that the two of them conveyed this legal advice to Dr. Hattemer.

Defendants carry the burden of establishing that the notes at issue are privileged. *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999). Thus, "it is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." *In re Grand Jury Subpoena Dtd. January 4, 1984*, 750 F.2d 223, 224 (2d Cir. 1984) (emphasis supplied). Of critical import here, **"[the] burden is not ... discharged by mere conclusory or ipse dixit assertions."** *In re Bonanno*, 344 F.2d 830, 833 (2nd Cir. 1965) (emphasis supplied).

The traditional formulation of the attorney client privilege originates with Wigmore and provides that: "(1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." *Reed v. Baxter* 134 F.3d 351, 355-56 (6th Cir. 1998) (citing *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992) (citing *United States v. Goldfarb*, 328 F.2d 280, 281 (6th Cir. 1964)) ; *see also* 8 J. Wigmore, *Evidence* § 2292 at 554 (McNaughton rev. 1961).

Although this formulation on its face applies merely to communications by the client to the attorney, the courts hold that the same protection extends to legal advice rendered by the attorney, at least if it might reflect or reveal the client's confidential communications. *Golden Trade v. Lee Apparel Company*, 143 F.R.D. 514, 517 (S.D. N.Y. 1992).[2]

---

[2] Citing *Schlefer v. United States*, 702 F.2d 233, 245 (D.C.Cir. 1983); *United States v. Amerada Hess Corp.*, 619 F.2d 980, 986 (3rd Cir. 1980) (citing cases); *P & B Marina, Ltd. Partnership v. Lo-grande*, 136 F.R.D. 50, 53 (E.D.N.Y. 1991); *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981) (dictum); *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d at 1036-37; 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 503(b)[03] at 503-39 & n.5 (1990).

Thus, in the case at bar, where the Defendants allege that the privileged portions of the notes are recordings of the advice of lawyers to THA (and not the client's statements to the lawyer), the guiding principle of law is:

"The attorney-client privilege ... protects confidential communications from an attorney to a client, but only if the attorney's communications would reveal confidential client communications." *Western Trails, Inc. v. Camp Coast to Coast, Inc.*, 139 F.R.D. 4, 8 (D.Col. 1991) (citing *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984)). Stated another way, "the privilege extends to an attorney's communications to a client in order to protect against disclosure of confidential client communications." *Id.* (citing *Coastal States Gas Corp. v. Dep't. of Energy*, 617 F.2d. 854, 862 (D.C. Cir. 1980)).

Moreover, "although the attorney-client privilege is of ancient lineage and continuing importance, the confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived. **The courts will grant no greater protection to those who assert the privilege than their own precautions warrant.**" *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989).

Here, Defendants have provided only conclusory allegations that Hayes and Morneault obtained legal advice from counsel that they then conveyed to Dr. Hattemer as attorney-client advice. *See John Labatt, Ltd. v. Molson Breweries*, 898 F.Supp. 471, 477 (E. D. Mich. 1995) ("the proponent must offer more than conclusory statements.").

Here, Defendants did not make any attempt to preserve any privilege that may have existed when they communicated with Dr. Hattemer. Neither Hayes nor Morneault informed Dr. Hattemer that the communications should be considered privileged, nor did they take any other precautions to ensure, or even to indicate, that the information being conveyed was intended to be privileged, notwithstanding that they saw that Dr. Hattemer was taking notes of the conversations.[3]

---

[3] The undersigned is taken aback by Hayes's blithe assertion that "I did not on all occasions feel obligated to tell them [fellow administrators] specifically that I was conveying advice from legal counsel." (*See* Doc. 128, Ex. C at p. 2, Declaration of Deborah Hayes).

It bears repeating that "although the attorney-client privilege is of ancient lineage and continuing importance, the confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived. **The courts will grant no greater protection to those who assert the privilege than their own precautions warrant.**" *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989).

Furthermore, upon an *in camera* review, the undersigned finds, and the Defendants do not argue otherwise, that the redacted portions of the notes themselves do not indicate that the statements recorded in the notes originated from lawyers.[4] Moreover, for that matter, the notes do not evidence that what was recorded reflects or discloses communications from the client to the lawyer.[5]

Under the totality of these circumstances, the law simply does not recognize the sort of "accidentally arising" privilege that Defendants now seek to create.

Accordingly, Defendants having failed to meet their burden to evidence that the information is protected by the attorney-client privilege and not waived, the United States's motion to compel (Doc. 105) is **GRANTED**, and Defendants shall produce Dr. Hattemer's notes without the redactions.

**IT IS SO ORDERED.**

Date: 7/7/09

Timothy S. Black
United States Magistrate Judge

---

[4] *See also* the Deposition of William McErlean, Esq., Dr. Hattemer's attorney, at page 22: "You could not tell the redacted information came from an attorney." (Doc. 128, Ex. E, at p. 69).

[5] "The attorney-client privilege ... protects confidential communications from an attorney to a client, but only if the attorney's communications would reveal confidential client communications." *Western Trails, Inc. v. Camp Coast to Coast, Inc.*, 139 F.R.D. 4, 8 (D.Col. 1991).